**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| ARBIOS SYSTEMS, INC. | : | Case No. 09-10082 (BLS) |
| | : | |
| Debtor. | : | |
| | : | |

**THE DEBTOR IN THIS CASE IS A SMALL BUSINESS. AS A RESULT, THE DEBTOR IS PERMITTED TO DISTRIBUTE AND HAS DISTRIBUTED THIS PLAN AS A DISCLOSURE STATEMENT TO PROVIDE YOU WITH ADEQUATE INFORMATION FOR YOU TO CAST YOUR BALLOT BEFORE ITS FINAL APPROVAL BY THE COURT. IF AN OBJECTION TO THIS PLAN AS A DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS PLAN AS A DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN**

# FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Arbios Systems, Inc. ("Arbios" or "Debtor" or the "Company") hereby proposes the following First Amended Chapter 11 Plan of Reorganization (the "Amended Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Under Section 1125(f) of the Bankruptcy Code, the Bankruptcy Court has preliminarily approved that a vote to accept or reject this Plan can be solicited from a holder of a Claim or Equity Interest based upon this Plan alone. **ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION**.

The rules of construction set out in Section 102 of the Bankruptcy Code shall apply to the construction of the terms and provisions set forth in this Plan.

Ballots for acceptance or rejection of the Plan are being provided to Creditors in the Class of Claims entitled to vote to accept or reject the Plan, as well as holders of Interests entitled to vote to accept or reject the Plan. After carefully considering this Plan, please indicate your vote with respect to the Plan on the enclosed ballot and return such ballot before the voting deadline to Olshan Grundman Frome Rosenzweig & Wolosky LLP. Park Avenue Tower, 65 East 55th Street, New York, New York 10022, attn: Suhailah Sallie. If you are asserting more than one Claim, please copy your ballot and return one completed ballot for each Claim.

You should complete and sign the enclosed ballot and return such ballot in the envelope provided. In order to be counted, your ballot must be actually received by to Olshan Grundman Frome Rosenzweig & Wolosky LLP. Park Avenue Tower, 65 East 55th Street, New York, New York 10022, attn: Suhailah Sallie on or before May ~~11,~~15, 2009 (the "Voting Deadline"). Other forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable. Facsimile transmissions are not acceptable. Electronic mail transmissions are not acceptable. There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request a replacement by contacting Suhailah Sallie, 212-451-2324, Olshan Grundman Frome Rosenzweig & Wolosky LLP. Park Avenue Tower, 65 East 55th Street, New York, New York 10022.

A failure to return a ballot will be deemed a vote for the Plan. Any improperly completed or late ballot will not be counted. Any ballot that indicates both an acceptance and rejection of the Plan will be deemed a vote to accept the Plan. If no votes to accept or reject the Plan are

received with respect to a particular class, the class will be deemed to have voted to accept the Plan. If a creditor or interest holder casts more than one ballot voting the same Claim or Interest before the Voting Deadline, the latest-dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots. Voting Classes must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes within a particular Class; thus, a ballot (or a group of ballots) within a particular Class received from a single Class Member that partially rejects and partially accepts the Plan will be deemed to have voted to accept the Plan.

Confirmation Of The Plan.

Your vote on the Plan is important. In order for the Plan to be accepted, of those Holders of Claims who cast ballots, the affirmative vote of at least two-thirds (2/3) in dollar amount **and** more than one-half (1/2) in number of classified Claims is required. The affirmative vote of at least two-thirds (2/3) in amount of Common Stock is required as well.

If certain Classes vote against the Plan, the Bankruptcy Court may still confirm the Plan if the Court finds that the Plan does not unfairly discriminate against the impaired Class or Classes voting against the Plan and accords fair and equitable treatment to those impaired Class or Classes. The Plan Proponents intend to request such a "cramdown" confirmation if any Class does not vote in favor of the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for ~~May 18,~~June 22, 2009 at 2:00 p.m. (Eastern). Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan, be served upon: (i) Olshan Grundman Frome Rosenzweig & Wolosky LLP, counsel for the Debtor, Park Avenue Tower, 65 East 55th Street, New York, New York 10022, Attn: Andrea Fischer, Esq., (ii) Ciardi Ciardi & Astin, counsel for the Debtor, 919 N. Market Street, Suite 700,

Wilmington, DE 19801, Attn: Daniel K. Astin, Esq., (iii) the United States Trustee for the District of Delaware, 844 King Street, Suite 2313, Wilmington, DE 19801, Attn. David Klauder, Esq.; and, filed with the Court on or before 4:00 p.m. on May ~~11,~~15, 2009, in the manner described in the order scheduling hearing on confirmation. **The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court of the filing of a hearing agenda.**

Recommendations With Respect To The Plan.

The Plan Proponents recommend that you accept the Plan by voting your ballot accordingly and timely returning your completed ballot in the pre-printed envelope provided.

Disclaimer.

**The Bankruptcy Court's approval of this Plan does not constitute either a guaranty of the accuracy of the information contained herein or an endorsement of the Plan. This Plan is the only document authorized by the Bankruptcy Court to be used in connection with the solicitation of votes accepting the Plan. No representations other than those explicitly set forth in this Plan are authorized concerning the Debtor, including the value of its assets or the Claims of its creditors.**

**Safe harbor statement under the Private Securities Litigation Reform Act of 1995: All forward-looking statements contained herein or otherwise made by the Debtor or Plan Proponent involve material risks and uncertainties and are subject to change based on numerous factors, including factors that are beyond the Debtor or Plan Proponents' control. Accordingly, the Debtor's or Reorganized Debtor's future performance and financial results may differ materially from those expressed or implied in any such forward-looking statements. Such factors include, but are not limited to, those described in this Plan. The Debtor does not undertake to publicly update or revise its forward-looking**

**statements even if experience or future changes make it clear that any projected results expressed or implied therein will not be realized.**

**This Plan has been prepared pursuant to section 1125(f)(i) of the Bankruptcy Code and Rules 3016 and 3017.1 of the Federal Rules of Bankruptcy Procedure and is not necessarily in accordance with federal or state securities laws or other similar laws. The offer of New Common Stock made hereunder to Common Stock Holders has not been registered under the Securities Act or similar state securities or "blue sky" laws. The offers and issuances of New Common Stock to Common Stock Holders pursuant to Article IV of the Plan are being made in reliance on the exemption from registration specified in section 1145 of the Bankruptcy Code. None of the stock to be issued on the Effective Date to Common Stock Holders has been approved or disapproved by the Securities and Exchange Commission or by any state securities commission or similar public, governmental, or regulatory authority, and neither the Securities and Exchange Commission, nor any such state authority has passed upon the accuracy or adequacy of the information contained in this Plan. Any representation to the contrary is a criminal offense. Persons or entities trading in or otherwise purchasing, selling or transferring securities of the Debtor should evaluate this Plan in light of the purposes for which they were prepared.**

**Except as otherwise specifically noted, the financial information contained herein has not been audited by a certified public accountant and has not necessarily been prepared in accordance with generally accepted accounting principles.**

**All parties in interest are encouraged to read the entire Plan carefully, including the exhibits, before deciding to vote either to accept or reject the Plan. Holders of Claims**

**should not, however, construe the contents of this Plan as providing any legal, business, financial, or tax advice and should consult with their own advisors.**

## INTRODUCTION

On January 9, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

## The Nature of the Debtor's Business

Arbios is a publicly-held medical device company with a proprietary product candidate, SEPET™ liver assist device ("SEPET™"), that has successfully completed a Phase I/II proof-of-concept trial and has FDA agreement to proceed to a pivotal Phase III clinical trial. Although Arbios has the requisite FDA approval, it does not currently have the funding or support necessary to initiate or complete the Phase III clinical trial. SEPET™ is a hemofiltration device designed to support patients suffering from cirrhosis due to chronic liver disease and who are hospitalized with acute complications resulting from worsening liver dysfunction and portal hypertension. There are currently no FDA-approved, effective treatments for patients suffering from liver failure.

Arbios has exclusive manufacturing agreements with recognized and well-respected manufacturers of medical products that would allow commercial scale production and economics. Arbios plans to outsource manufacture and supply of SEPET™ through these key supply agreements with Germany based Membrana GmbH, the world's leading independent supplier of dialysis membrane, and NxStage Medical, Inc., a U.S. based dialysis equipment provider that assembles SEPET™.

Due to difficulty in securing $15 million to fund the pivotal trial in the U.S., Arbios, prior to suspension of its operations in August 2008, was focused on obtaining CE Mark approval for

SEPET™ in Europe. Receipt of the CE Mark could enable the Company to commence marketing in Europe in the near future without further clinical trials, and to potentially attract a distribution and marketing partner. Using the Phase I/II clinical data and with existing regulatory controls, the Company has engaged a notified body and an authorized representative to assist Arbios in seeking to obtain the CE Mark. Arbios's plan upon receipt of sufficient additional funding was to focus its efforts on 1) securing the CE Mark in Europe, 2) forming a strategic European distribution and marketing relations and 3) completing Segment I of the Phase III trial by treating 5 patients in Rostock, Germany and 4) potentially conducting a Phase I/II clinical trial in septic burn patients through a partnership with the US Army. Treating these patients could further determine effectiveness of the device, and support CE marking, if necessary.

**Circumstances Leading to Filing**

In the 12 months leading up to the filing of the petition in this case, the Debtor expended considerable efforts seeking to obtain financing such that it could continue its clinical trials and market SEPET™, or to consummate a strategic transaction to sell itself or its assets.

In August 2008, in view of its decreasing cash, Arbios suspended operations to focus solely on obtaining such financing or sale. Arbios released all employees with the exception of Shawn Cain, the President and Interim CEO, and Scott Hayashi, the company's CFO, who continue to work for Arbios as consultants on a month-to-month basis

On January 2, 2009, Immunocept, LLC declared a default in its License Agreement, dated March 29, 2007, with Arbios. Pursuant to this agreement, the Company had in-licensed certain intellectual property from Immunocept, including five issued U.S. patents, four pending U.S. patents, and two pending European patents. In its notice of default, Immunocept claimed

that the Company owed Immunocept a milestone payment and will owe royalties on net sales of products that are covered by the License Agreement, including the SEPET™ system.

**Significant Events Since the Petition Date**

Prior to the Petition Date, the Company was in active discussions with various potential buyers of its assets, none of which discussions ultimately progressed to any binding agreement.

After the Petition Date, the Company was approached by individuals who had previously expressed interest in purchasing certain of the assets, for a sale of a substantial majority of the Company's equity.

**The Plan Term Sheet**

On March 16, 2009, the Company and Arbios Acquisition Partners, LLC ("AAP") entered into a term sheet (the "Plan Term Sheet") pursuant to which, on the Effective Date: (i) the Plan Funder will provide an aggregate, including prior paid deposits, of $1,000,000 to the Debtor, (ii) Administrative and Priority Claims will be paid in full, (iii) Interests in the Debtor will be cancelled and fully extinguished, (iv) 90% of New Common Stock will be issued to the Plan Funder, (v) Allowed General Unsecured Claim Holders will receive 90% of the principal amount of their Allowed Claim, (vi) Common Stock Holders will be issued 10% of New Common Stock, *Pro Rata.*

**The Plan**

Having already marketed the Debtor and its assets for many months prior to and subsequent to the Petition Date, it is the Debtor's business judgment that the Plan represents the highest and best return for estate constituencies. In the Debtor's judgment, any liquidation or alternative sale of assets is unlikely to yield material proceeds outside the collection of inventory, intellectual property and supply contracts currently in the Company that are *de minimis*.

Moreover, after months of marketing and discussions with various parties, the deal set forth in the Plan is the only concrete proposal for the Debtor and its assets that has materialized.

## ARTICLE I
## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1 "Administrative Claim" shall mean a claim for any cost or expense of administration in connection with the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330 and 503 of the Bankruptcy Code or otherwise allowed by the Court, and all fees and charges assessed against the Debtor's estate pursuant to Chapter 123, Title 28, United States Code.

1.2 "Allowed Claim" shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant to Section 501(a) of the Bankruptcy Code on or before the Bar Date (as defined below), and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules (as defined below) or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order (as defined below) of the Bankruptcy Court allowing such claim or any portion thereof, and Claims filed after the Bar Date are a nullity unless approved by an Order of the Bankruptcy Court.

1.3 “Arbios” shall mean Arbios Systems, Inc., the Debtor.

1.4 “Avoidance Actions” shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.5 “Ballot” shall mean the form transmitted to Creditors and Common Stock Holders with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan (as defined below) pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.6 “Bankruptcy Code” shall mean Title 11 U.S.C. Sections 101 *et. seq.*, in effect on the Petition Date (as defined below).

1.7 “Bankruptcy Court” shall mean the United States Bankruptcy Court for the District of Delaware, and any court having jurisdiction to hear appeals therefrom.

1.8 “Bankruptcy Rule(s)” shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.9 “Bar Date” shall mean the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor.

1.10 “Business Day” shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.11 “Cash” shall mean legal tender of the United States of America or cash equivalents.

1.12 “Chapter 11 Case" shall mean the above-captioned cases commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.13 "Claim" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including without limitation, claims arising under Section 502 of the Bankruptcy Code.

1.14 "Class" shall mean a class of holders of Claims or Interests (as defined herein) described in Articles II and III of the Plan.

1.15 "Common Stock" means the common stock of the Debtor.

1.16 "Common Stock Holder" shall mean a holder of common stock of the Debtor.

1.17 "Confirmation Date" shall mean the date upon which the Confirmation Order (as defined below) is entered by the Bankruptcy Court.

1.18 "Confirmation Hearing" shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.19 "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.20 "Convertible Securities" shall mean Interests in the Debtor, other than Common Stock.

1.21 "Convertible Securities Holder" shall mean a holder of equity interests in the Debtor, other than Common Stock.

1.22 "Creditor" shall mean: (i) an entity that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) an entity that has a Claim against the Debtor's estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.23 "Debtor" shall mean Arbios.

1.24 "Debtor-in-Possession" shall mean Debtor as debtor-in-possession under §§1107 and 1108 of the Bankruptcy Code.

1.25 "Disputed Claim" shall mean any Claim (other than an Allowed Claim): (i) which is scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or an order of the Bankruptcy Court for the filing of such objections, and as to which, such objection has not been determined by a Final Order (as defined below) of the Bankruptcy Court.

1.26 "Distribution Date" shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims.

1.27 "Effective Date" shall mean the date the Confirmation Order becomes a Final Order. If the entire Plan Funding Amount has not been provided by the Effective Date, the Confirmation Order will not become a Final Order and the Plan shall become null and void and will not become effective, unless the parties agree otherwise.

1.28 "Estate" shall mean the estate created by Section 541 of the Bankruptcy Code.

1.29 "Estate Litigation Claims" shall mean any and all current and future causes of action under Sections 547 through 552 of the Bankruptcy Code held by the Debtor.

1.30 "Executory Contract" shall mean any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Petition Date and which are executory within the meaning of Section 365 of the Bankruptcy Code.

1.31 "Final Order" shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending or (ii) as to which any right to appeal or seek review,

rehearing, or certiorari has been waived or (iii) an order or judgment which has been appealed, has been affirmed on appeal and as to which affirmation the time for further appeal has expired; provided, however, that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure. The Confirmation Order shall not become a Final Order unless and until Debtor's counsel has filed a certification that the Plan Funding Amount has been received (the "Certification"). Immediately upon the receipt of the entire Plan Funding Amount, Debtor's counsel is obligated to file the Certification.

1.32 "General Unsecured Claim" shall mean any unsecured Claim which is not an Administrative Claim, Priority Claim, Priority Tax, or Interest and that arose prior to the filing of the Debtor's Chapter 11 Case and includes, without limitation, Claims based upon pre-petition trade accounts payable or a Claim based upon the rejection of an executory contract during pendency of the Chapter 11 Cases.

1.33 "Immunocept License" shall mean the license agreement between the Debtor and Immunocept, LLC.

1.34 "Interests" shall mean any and all equity securities in the Debtor, as defined in Section 101(16) of the Bankruptcy Code.

1.35 "Insider" shall have the meaning set forth in the Bankruptcy Code.

1.36 "New Common Stock" shall mean common stock of the Reorganized Debtor to be issued pursuant to the Plan.

1.37 "Person" shall mean an individual, a corporation, a partnership (including a limited partnership), a limited liability company, an association, a joint stock company, a joint

venture, an estate, a trust, an unincorporated organization or a government or any political subdivision thereof or other entity.

1.38 "Petition Date" shall mean January 9, 2009, the date of the filing of the Chapter 11 petition in this Chapter 11 case.

1.39 "Plan" shall mean this Plan of Reorganization, either in its previous form, its present form or as it may be altered, amended or modified from time to time.

1.40 "Plan Funder" shall mean Arbios Acquisition Partners LLC.

1.41 "Plan Proponents" shall mean Plan Funder and Debtor.

1.42 "Plan Funding Amount" shall mean $1,000,000.

1.43 "Priority Claim" shall mean a Claim allowable under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.44 "Priority Tax Claim" shall mean a Claim of any taxing authority, either secured or unsecured, entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.45 "Professional Persons" shall mean, where applicable herein,(i) Olshan Grundman Frome Rosenzweig & Wolosky LLP, lead counsel to the Debtor, (ii) Ciardi, Ciardi & Astin, local counsel to the Debtor, (iii) TroyGould, PC, special corporate/securities counsel to the Debtor, (iv) Bromberg Sunstein, LLP, special patent counsel to the Debtor, and any other professionals who have been heretofore retained as per order of the Bankruptcy Court.

1.46 "*Pro Rata*" shall mean proportionally according to the total amount of Allowed Claims or Allowed Shareholder Interests in a particular Class.

1.47 "Reorganized Debtor" shall mean the Debtor as it is reconstituted on the Effective Date.

1.48 "Unclaimed Distribution" shall mean any distribution contemplated under the Plan unclaimed after the 120th day following the Distribution Date. Unclaimed Distributions shall include checks and the funds represented thereby (i) which have been returned as undeliverable without a proper forwarding address; (ii) which have not been paid; and (iii) which were not mailed or delivered because of the absence of a correct address.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

2.1 *Summary*. The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of the Plan. The treatment with respect to each Class of Claims and Interests provided for in this Article II shall be in full and complete satisfaction, release and discharge of such Claims and Interests. Impaired claims are those that are not being paid in full.

2.2 The classification of Claims under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | General Unsecured Claims | Impaired | Yes |
| 2 | Common Stock Holders | Impaired | Yes |
| 3 | Convertible Securities Holders | Impaired | No (deemed rejected) |

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1 Class 1— General Unsecured Claims

i. Classification: Class 1 consists of all General Unsecured Claims.

ii. Treatment: Class 1 Creditors holding General Unsecured Claims shall receive 90% of the principal amount of their Allowed Claim under the Plan.

iii. Voting: Class 1 is an Impaired Class. Therefore, the Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan. The votes of Insiders will not be counted for confirmation purposes.

3.2 Class 2 – Common Stock:

i. Classification: Class 2 consists of all Common Stock in the Debtor.

ii. Treatment: The Holders of Class 2 Common Stock will receive a *Pro Rata* share of New Common Stock, up to 10%, in the aggregate, of New Common Stock[1]. All Interests in the Debtor will be cancelled and fully extinguished pursuant to, and on the Effective Date of, the Plan.

iii. Voting: Class 2 is an Impaired Class. Therefore, the Holders of Common Stock in Class 2 are entitled to vote to accept or reject the Plan. The votes of Insiders will not be counted for confirmation purposes.

3.3 Class 3 – Convertible Securities:

i. Classification: Class 3 consists of all Convertible Securities of the Debtor.

ii. Treatment: The Holders of Class 3 Convertible Securities shall receive no distribution under the Plan on account of such Convertible Securities and such Convertible Securities will be cancelled and fully extinguished pursuant to, and on the Effective Date of, the Plan.

iii. Voting: Class 3 is an Impaired Class. Pursuant to Section 1126(5) of the Bankruptcy Code, Class 3 Convertible Securities Holders are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.4 Special Provision Governing Unimpaired Claims. Except as otherwise provided in the Plan, nothing under the Plan is intended to, or shall affect, the Debtor's or Reorganized Debtor's rights and defenses in respect of any Claim that is Unimpaired under the Plan, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Unimpaired Claims.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1 Summary. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with

[1] A schedule showing the distribution of New Common Stock is attached hereto as Exhibit D.

this Article IV and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

4.2 Administrative Expense Claims. Subject to the provisions of Sections 507(a) of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the date on or after the Effective Date that such Claim becomes an Allowed Administrative Expense Claim, or upon such other terms as may be agreed upon by such Holder and the Reorganized Debtor or otherwise upon order of the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims and Post-Confirmation Administrative Expenses representing obligations incurred by the Debtor in the ordinary course of business, or otherwise assumed by the Debtor on the Effective Date pursuant to the Plan, including any tax obligations arising after the Petition Date, will be paid or performed by Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

(a) Bar Date All Administrative Expense claims not already filed with the Court must be filed no later than 30 days after the Confirmation Date or be forever barred.

4.3 Priority Tax Claims: Priority tax claims will be paid in full under the Plan.

## ARTICLE V
## MEANS FOR IMPLEMENTATION

5.1 Continued Corporate Existence. The Debtor will continue to exist after the Effective Date as a Delaware corporation, with all of the power of a corporation under applicable law under the same certificate of incorporation, as amended, as set forth more fully below. The Plan shall be implemented as follows:

~~(a) On the Effective Date, immediately prior to the Plan becoming effective, (i) the Plan Funder shall make available to the Reorganized~~

(a) ~~(b)~~ On the Effective Date, immediately prior to the Plan becoming effective, (i) the Plan Funder shall make available to the Reorganized Debtor the Plan Funding Amount, to the extent that any of the Plan Funding Amount has not already been made available pursuant to the Plan Term Sheet, and (ii) immediately upon completion of (i) above, Debtor's counsel shall file the Certification. The foregoing recapitalization will be effectuated pursuant to the applicable provisions of the Securities Act or any applicable exemptions thereunder. Moreover, after the Effective Date, the Reorganized Debtor contemplates seeking additional capital through additional equity raises, which shall be accomplished pursuant to the applicable provisions of the Securities Act or any applicable exemptions thereunder.

(b) ~~(c)~~ If the Plan Funding Amount is not provided on the Effective Date, the Confirmation Order will not become a Final Order, and the Plan shall not become effective and shall be null and void, unless the parties agree otherwise.

(c) ~~(d)~~ On the Effective Date, all Interests in the Debtor will be cancelled and fully extinguished.

(d) ~~(e)~~ On the Effective Date, the Reorganized Debtor will issue 50,000,000 shares of New Common Stock, 90% of which will be issued to the Plan Funder, and 10% of which will be issued to Class 2 Common Stock Holders, *Pro Rata*.

(e) ~~(f)~~ On the Effective Date, the Reorganized Debtor will assume the executory contracts listed on Exhibit A attached hereto.

~~(g) On the Effective Date, the Reorganized Debtor will assume the Immunocept License, as modified, as set forth on Exhibit B attached hereto[2].~~

(f) Intentionally omitted.

**ARTICLE VI**
**POST-CONFIRMATION MATTERS**

6.1 Debtor's Certificate of Incorporation. On the Effective Date (or as soon as reasonably practicable thereafter), the Reorganized Debtor shall file its amended certificate of incorporation and by-laws (which shall be Filed with the Bankruptcy Court as part of the Plan Supplement). The amended certificate of incorporation shall satisfy the provisions of the Plan

and the Bankruptcy Code, and shall include articles, among others, authorizing the Reorganized Debtor to issue 50,000,000 shares of New Common Stock. After the Effective Date, the Reorganized Debtor may amend and restate the Amended Certificate of Incorporation and By-Laws as permitted by applicable law.

6.2 Directors and Officers. On the Effective Date, the Debtor's board of directors and officers will resign/step down, and the board of directors and officers of the Reorganized Debtor shall consist of the individuals listed in Exhibit C to the Plan. The Debtor's current interim chief executive officer, Shawn P. Cain, shall not be an officer of the Reorganized Debtor, but shall work for the Reorganized Debtor as a consultant.

6.3 The classification and composition of the board of directors of the Reorganized Debtor shall be consistent with the Amended Certificate of Incorporation and By-Laws. Each such director shall serve from and after the Effective Date pursuant to the terms of the Amended Certificate of Incorporation and By-Laws, the other constituent documents of the Reorganized Debtor, and applicable law.

6.4 Corporate Action. On the Effective Date, the adoption of the Amended Certificate of Incorporation or other constituent documents, the selection of directors and officers of the Reorganized Debtor and all actions contemplated by the Plan shall be deemed authorized and approved in all respects. Any corporate action required to be taken by the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security holders or the directors of the Reorganized Debtor. On the Effective Date, the appropriate officers and directors of the

[2] The executed modified Immunocept License will be provided to all interested parties prior to the hearing on the Motion to Conditionally Approve the Plan as Disclosure Statement.

Reorganized Debtor are authorized and directed to issue, execute and deliver the agreements, documents, securities and other instruments contemplated by the Plan.

6.5 Directors and Officers Liability Insurance. On the Effective Date, the tail policy of the Debtor's D&O coverage will be engaged. On the Effective Date, or as soon as reasonably practical thereafter, the Reorganized Debtor shall purchase appropriate insurance, including, but not limited to D&O coverage.

6.6 Cancellation of Interests. On the Effective Date, other than the New Common Stock, (i) all Interests in the Debtor; (ii) any and all stock options (including, but not limited to, all stock options granted to the Debtor's employees); (iii) any and all warrants; and (iv) any instrument evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are issued under the Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Interests in the Debtor, and any and all warrants, options, rights or interests with respect to equity securities in the Debtor that have been authorized to be issued but that have not been issued shall be deemed canceled and extinguished without any further action of any party.

6.7 Issuance of New Common Stock. On the Effective Date, the Reorganized Debtor shall issue shares of New Common Stock in an amount necessary to satisfy the Debtor's obligations under Article IV of the Plan. It is an integral and essential element of the Plan that the issuance of the New Common Stock to Common Stock Holders pursuant to Article IV of the Plan shall be exempt from registration under the Securities Act and any state or local law, pursuant to Bankruptcy Code § 1145. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Chapter 11 Case, the Debtor, the Reorganized Debtor, the Plan Funder, the SEC and all other federal, state and local regulatory enforcement agencies,

to the effect that such offer and issuance fall within the exemption(s) from registration under the Securities Act and any state or local law pursuant to Bankruptcy Code § 1145. Any shares of New Common Stock authorized but not issued pursuant to the Plan shall be retained in treasury by the Reorganized Debtor and available for subsequent issuance in accordance with General Corporation Law of the State of Delaware and the Securities Act and/or any state or local law, and any applicable regulations relating thereto, .and the certificate of incorporation and by-laws as the same may be amended and/or restated.

6.8 Set-Offs. The Debtor may, but shall not be required to, set-off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so, nor the allowance of any Claim hereunder, shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against such Claimant.

6.9 Revesting and Retention of Claims and Interests. Except as otherwise provided for in the Plan, upon the Effective Date, the property of the Estate will vest in the Reorganized Debtor, free and clear of all Claims and Interests. The Debtor may institute and prosecute the Estate Litigation Claims, and any litigation necessary to accomplish and effectuate the resolution of any of the claims.

## ARTICLE VII
## EXECUTORY CONTRACTS

7.1 Rejection of Executory Contracts. Any contract that is executory, in whole or in part, to which the Debtor is a party and which has not been assumed pursuant to Section 365 and 1123 of the Bankruptcy Code during the pendency of Chapter 11 case, and which has not been assumed pursuant to section 7.2 below, shall be deemed rejected as of the Confirmation Date.

7.2 Assumption of Contracts. Any contract that is executory, in whole or in part, to which the Debtor is a party and which is listed on the annexed Exhibit A shall be assumed under the Plan.

7.3 Cure of Defaults. As to any executory contracts assumed pursuant to the Plan, ~~with the exception of the Immunocept License,~~ the Reorganized Debtor shall, pursuant to the provisions of Section 1123(a)(5)(G) of the Bankruptcy Code, cure all defaults existing under and pursuant to such executory contract by paying the amount, if any, claimed by any party to such executory contract either in a proof of Claim, which proof of Claim shall be filed with the Court within thirty (30) days of such assumption, or as set forth in the Debtor's schedules. Payment of such Claims shall be made on the later of (i) thirty (30) days after the expiration of the period for filing an objection in respect of any proof of claim or (ii) thirty (30) days after an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

7.4 ~~Immunocept License. The Immunocept License will be assumed, as modified, as set forth on Exhibit B hereto.~~Intentionally omitted.

## ARTICLE VIII
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

8.1 Objections. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or

before the Effective Date, but in no event later than ninety (90) days after the Effective Date – unless the Bankruptcy Court extends the time.

8.2 Late Filed Claims. Claims filed after the Bar Date are a nullity unless otherwise ordered by the Bankruptcy Court.

8.3 Amendment of Claims. A Claim may be amended after the Confirmation Date and prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

8.4 Reserve for Disputed Claims. The Debtor shall reserve for account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such Distribution Date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon. Notwithstanding the foregoing sentence, the Debtor may reserve, with the approval of the Bankruptcy Court, with respect to one or more Disputed Claims, less than that amount of cash which would otherwise be distributable to the holder of such Claim were such Disputed Claim(s) an Allowed Claim(s) on the Effective Date. The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.1 Vesting of Property. On the Confirmation Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and



~~610058-12~~
618447-2

clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in the Plan.

9.2 Discharge Granted Under Plan. The rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all Causes of Action against the Debtor or the Estate that arose before the Effective Date to the fullest extent permitted by Section 1141 of the Bankruptcy Code, including but not limited to all causes of action of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order, except as provided herein or therein, shall be a judicial determination of discharge of all Claims or causes of action against the Debtor, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a discharged claim or Cause of Action.

9.3 ~~Releases~~Consideration. Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of or Interests in any nature against the Debtor or any of its assets or properties.

9.4 Exculpation. Neither the Debtor, the Plan Funder, the Debtor's Professional Persons, nor any of their respective members, shareholders, officers, directors, employees, attorneys, advisors or agents, past or current, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for fraud, willful misconduct or gross negligence.

9.5 Release By Debtor of Certain Parties. As of the Effective Date, the Debtor shall be deemed to have waived and released its present and former directors, officers, employees, attorneys, consultants, advisors, and agents (acting in such capacity) who were directors, officers, employees, members, attorneys, consultants, advisors or agents, respectively, at any time during the Chapter 11 Case from any and all causes of action of the Debtor, including without limitation, causes of action which the Debtor as the Debtor-in-Possession otherwise has legal power to assert, compromise, or settle in connection with the Chapter 11 Case, arising on or prior to the Effective Date; provided, however, that the foregoing provisions shall not operate as a waiver or release of (i) contractual obligations owed by such person to the Debtor or (ii) Causes of Action relating to such person's actions or omissions determined in a Final Order to have constituted gross negligence or willful misconduct.

9.6 Injunction. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor, and who received notice of the Plan, shall, as of the Confirmation Date, be permanently enjoined from taking any of the following actions against or affecting the Debtor, the Plan Funder, the Professional Persons, the Reorganized Debtor, the present and former directors, officers, employees, partners, members, managers, designees, attorneys, accountants, consultants, contractors, advisors, and agents (acting in such capacity), of the Debtor, Plan Funder, Professional Persons or Reorganized Debtor respectively (collectively, the "Injunction Beneficiaries") with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order):

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any

direct or indirect successor in interest to the Injunction Beneficiaries or any assets of any such successor in interest;

(b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries, or any assets of any such successor in interest;

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries, or any assets of any such successor in interest; and

(d) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly against any obligation due the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries;

9.7 Liability, Indemnification.

(a) ~~The Injunction Beneficiaries shall not be liable for any act or omission taken or omitted to be taken in their respective capacities as such, other than acts or omissions found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to constitute willful misconduct or gross negligence by such person or entity.~~Intentionally omitted.

(b) The Reorganized Debtor shall indemnify and hold harmless the other Injunction Beneficiaries (each, an "Indemnified Party"), from and against and in response to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to reasonable attorneys' fees and expenses, arising out of or due to any of the actions or omissions of any of them, or consequences of any of such actions or omissions, or the status or capacity of any of the foregoing as contemplated by or in connection with the Plan, the Chapter 11 Case, or any claims causes of action relating to the Plan or the Chapter 11 Case up through and until the Effective Date, or the implementation, administration, pursuit or prosecution of any thereof, and including without limitation all costs and expenses (including without limitation reasonable attorneys' fees and expenses) in connection with the enforcement of the right to indemnification set forth herein, except in the case of any such Indemnified Party or entity for such liabilities, losses, damages, costs and expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have directly resulted from

such Indemnified Party's or entity's willful misconduct or gross negligence.

(c) The Reorganized Debtor shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating, in connection with the Plan, the Chapter 11 Case, or any claims causes of action relating to the Plan or the Chapter 11 Case up through and until the Effective Date, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; provided such Indemnified Party undertakes to the Reorganized Debtor to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under the Plan.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

10.1 Conditions to Effectiveness of the Plan. The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

i. The Bankruptcy Court shall have entered the Confirmation Order; and

ii. The Confirmation Order shall have become a Final Order;

iii. The Plan Funding Amount shall have been received by the Debtor.

## ARTICLE XI
## PROVISIONS CONCERNING DISTRIBUTIONS

11.1 Manner of Payments under the Plan. Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank. The Reorganized Debtor shall act as Disbursing Agent.

11.2 Fractional Cents. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

11.3 Unclaimed Cash. Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within four (4) months from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. All unclaimed cash shall be distributed to the Reorganized Debtor.

11.4 Disputed Payments or Distribution. In the event of any dispute between and among Claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under this Plan, the Debtor may, in lieu of making such payment or distribution to such entity, make it instead into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves.

## ARTICLE XII
## VOTING INSTRUCTIONS

12.1 Voting of Claims. Each holder of an Allowed Claim in Classes 1 and 2 shall be entitled to vote to accept or reject this Plan and holders of Interests in Class 3 are deemed to have rejected the Plan and are not entitled to vote, as provided for in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as

defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

12.2 Acceptance by a Class of Creditors or Interests. Consistent with Section 1126(c) of the Bankruptcy Code and except as provided for in Section 1126(e) of the Bankruptcy Code, a Class of Creditors shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in dollar amount **and** more than one-half (1/2) in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan. A Class of Interests shall have accepted this Plan if it is accepted by at least two thirds (2/3) in amount of Interests that have timely and properly voted to accept or reject this Plan. The votes of Insiders of the Debtor to accept the Plan will not be counted to determine acceptance, pursuant to bankruptcy Code Section 1129(a)(10).

12.3 Cramdown. To the extent any Impaired Class of Claims or Interest holders entitled to vote on the Plan votes to reject the Plan, the Debtor reserves the right to request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to such Class(es).

12.4 Submission of Ballots. Pursuant to a Court order, ballots on the Debtor's Plan must be filed within a prescribed period of time. All ballots should be properly completed as to whether the creditor/interest holder accepts the Plan, and should be sent to: Olshan Grundman Frome Rosenzweig & Wolosky, LLP, Park Avenue Tower, 65 East 55th Street New York, NY 10022-1106, Attn.: Suhailah Sallie, Paralegal.

12.5 Blank Ballots. Any ballot which is executed by the holder of an Allowed Claim or Interest, but which does not indicate an acceptance or rejection of the Plan, shall be deemed to

be an acceptance of the Plan, in the amount set forth on the Debtor's Schedules, as may be amended.

12.6 Deemed Acceptance. Any member of an impaired Class of Claims or Interests which fails to vote either to accept or reject the Plan shall be deemed to accept the Plan.

## ARTICLE XIII
## POST-CONFIRMATION REPORTS AND FEES

The Reorganized Debtor shall pay all quarterly fees required under 28 U.S.C. Section 1930 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a) To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b) To determine requests for payment of Claims entitled to priority under Section 507(a)(1) and 503(b) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c) To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts;

(d) To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334;

(e) To determine all disputed, contingent or unliquidated Claims;

(f) To modify this Plan pursuant to Section 1127 of the Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Code;

(g) To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h) To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i) To enter a final decree closing the Chapter 11 Case.

## ARTICLE XV
## AVOIDANCE ACTIONS

15.1 Avoidance Actions. The Debtor and Reorganized Debtor reserve the right to institute preference and fraudulent conveyance actions, and the like, pursuant to Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, for a period of 120 days after the Effective Date.

## ARTICLE XVI
## CREDITOR'S COMMITTEE

16.1 Appointment. An Official Committee of Unsecured Creditors has not been appointed in this Chapter 11 Case.

## ARTICLE XVII
## GENERAL/MISCELLANEOUS PROVISIONS

17.1 Modification of the Plan. The Plan Proponents reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Plan Proponents may, subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

17.2 Notices. All notices and correspondence to the Debtor should be forwarded in writing to:

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022-1106
(212) 451-2300
Attn: Andrea Fischer, Esq.

17.3 Article and Section References. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan; words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

17.4 Payment Dates. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

17.5 Enforceability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

17.6 Applicable Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of Delaware.

17.7 Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

17.8 Reservation of Rights. Neither the filing of this Plan, nor any statement or provision contained herein, be or be deemed to be an admission against interest. In the event that

the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 Case.

Dated: ~~April 3,~~June 8, 2009

ARBIOS SYSTEMS, INC.

By:___________________________________

Name:

Title:

ARBIOS ACQUISITION PARTNERS, LLC

By:___________________________________

Name:

Title: